UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,              :
                                                    :     **DECISION & ORDER**
              v.                            :     15-CR-287-20 (WFK)
                                                    :     19-CR-534 (WFK)
CORDERO PASSLEY,                      :
                                                    :
                  Defendant.      :
-----------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** Cordero Passley ("Defendant") brings this motion seeking a temporary order of pre-trial release on a secured bond, subject to home detention with electronic monitoring during the COVID-19 crisis. 15-CR-287, ECF No. 845, 19-CR-534, ECF No. 31 ("Def. Mot."). In support of his motion Defendant cites recently obtained information indicating he suffers from a compromised immune system and is consequently particularly susceptible to COVID-19 infection. *Id.* For the reasons discussed below, Defendant's Motion for bail is DENIED in all respects.

## PROCEDURAL HISTORY

On November 19, 2018, Defendant entered supervised release following his conviction for Assault in Aid-of Racketeering pursuant to 18 U.S.C. § 1959(a)(3). Violation of Supervised Release Report ("VOSR Rep.") at 3, 15-CR-287, ECF No. 808. On October 8, 2019, while on supervised release, Defendant was arrested for attempting to shoot a stranger in the course of a traffic dispute. *Id.*; Compl., 19-CR-534, ECF No. 1. Defendant was charged with violating the terms of his supervised release and indicted for Felon in Possession of a Firearm. Indictment, 19-CR-534, ECF No. 8; VSOR Rep. at 6–8. Defendant presented no bail application and was detained. Initial Appearance Calendar, 19-CR-534, ECF No. 4.

Defendant now brings this motion for temporary pretrial release on secured bond. Def. Mot. at 1. In his motion, Defendant argues he is particularly susceptible to COVID-19 infection ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 2. In support of the motion, Defendant proposes a bail package including a $250,000.00 bond, secured by his father, mother,

1

and older sister, as well as strict home detention with GPS or electronic monitoring. *Id.* at 4–5; Def.'s Suppl. Letter, 19-CR-534, ECF No. 33 ("Def. Supp. Ltr.").

The Government opposes Defendant's motion arguing Defendant fails to meet his burden of showing by clear and convincing evidence he "will not flee or pose a danger to any other person or to the community" and "offers no evidence ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on his [COVID-19] infection risk." Gov't Letter in Opp'n to Def.'s Mot., 15-CR-287, ECF No. 847, 19-CR-534, ECF No. 32, at 3, 8–9 ("Gov't Opp.").

## THE COVID-19 CRISIS

Beginning in late February 2020, a new viral infection, COVID-19 has swept into the United States. Derrick Bryson Taylor, *A Timeline of the Coronavirus Pandemic*, N.Y. Times (Apr. 2, 2020), https://www.nytimes.com/article/coronavirus-timeline.html; E.D.N.Y. Admin. Order 2020-13 at 1 ("As of [March 30, 2020], "over 33,000 – in excess of 50% – of the more than 59,000 confirmed cases of COVID-19 in New York State are in the boroughs of New York City and counties of Long Island that comprise the Eastern District of New York. These cases account for approximately 25% of the total number of confirmed cases nationwide to date."). Since arriving in the United States "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent." *United States v. Stephens*, 15-CR-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (Nathan, J.). The novel infection has been found to affect people who are immunocompromised more severely than healthy individuals, significantly increasing their risk of death. *Groups at Higher Risk for Sever Illness*, Ctr. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Apr. 9, 2020).

In particular, prison populations have been identified as being a potential hotspot for outbreaks of the virus. Tom McParland, *Pressure Grows to Better Address Bail Applications as COVID-19 Hits NY Federal Jails*, N.Y. Law Journal (Mar. 25, 2020, 06:11 P.M.), https://www.law.com/newyorklawjournal/2020/03/25/pressure-grows-to-better-address-bail-applications-as-covid-19-hits-ny-federal-jails/; Emma Brown & Dalton Bennett, *'Disaster waiting to happen': Thousands of inmates released as jails and prisons face coronavirus threat*, Washington Post (Mar. 25, 2020, 06:00 AM), https://www.washingtonpost.com/national/disaster-waiting-to-happen-thousands-of-inmates-released-as-jails-face-coronavirus-threat/2020/03/24/761c2d84-6b8c-11ea-b313-df458622c2cc_story.html. Indeed, as of April 7, 2020, the Bureau of Prisons ("BOP") had 3 confirmed cases of COVID-19 among inmates and 7 confirmed cases among staff at the Metropolitan Detention Center in Brooklyn, NY ("MDC") as well as 4 confirmed cases among inmates and 9 confirmed cases among staff at the Metropolitan Correctional Center in Manhattan, NY ("MCC"). Letter from M. Licon-Vitale, Warden, MCC New York and D. Edge, Warden, MDC Brooklyn to the Honorable Roslynn R. Mauskopf (Apr. 7, 2020), https://www.nyed.uscourts.gov/pub/bop/MDC_20200407_042057.pdf. Additionally, as of April 8, 2020, throughout the country the BOP has 253 confirmed cases of COVID-19 among inmates and 85 cases among staff. Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Apr. 9, 2020).

On March 13, 2020, the BOP issued a COVID-19 Action Plan to reduce the spread and transmission of the virus. Fed. Bureau of Prisons, Bureau of Prisons COVID-19 Action Plan (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp ("BOP Action Plan"). The BOP Action Plan suspended legal visits to inmates for 30 days but allowed for "case-by-case accommodation" at the local level and also specified "confidential legal calls will

be allowed in order to ensure inmates maintain access to counsel, . . . . If approved for an in-person visit, the attorney will need to undergo screening using the same procedures as staff." *Id.* On March 31, 2020, the BOP announced it was taking the additional step of securing all inmates "in their assigned cells/quarters to decrease the spread of the virus" for 14 days. COVID-19 Action Plan: Phase Five, Fed. Bureau of Prisons (Mar. 31, 2020, 06:30 P.M.), https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. The MDC and MCC also prepared a list of inmates who may be at heightened risk due to the epidemic.

In response to the pandemic, Chief Judge Mauskopf of the Eastern District of New York issued an administrative order excluding time, under 18 U.S.C. §§ 3161(a)-(c), (h)(7)(A), in all criminal matters through April 27, 2020. E.D.N.Y. Admin. Order No. 2020-06. Additionally, under the authority provided by section 15002(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Chief Judge Mauskopf authorized the use of video conferencing and telephone conferencing in, *inter alia*, detention hearings, arraignments, and misdemeanor pleas and sentencings in the Eastern District of New York. E.D.N.Y. Admin. Order No. 2020-13. Most recently, Chief Judge Mauskopf ordered the Wardens of the three prisons with pre-trial detainees for the Eastern District of New York to provide twice weekly, written status reports concerning "the incidence of infection of COVID-19 at each facility and the measures undertaken to mitigate the spread of COVID-19 within each facility." E.D.N.Y. Admin. Order 2020-14.

## DEFENDANT'S MOTION FOR BAIL

On April 7, 2020, Defendant filed his motion for bail. Def. Mot. at 1. ███████
████████████████████████████████████████████████
████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

████████████████ In support of his motion, Defendant argues he is at "high risk of severe illness in the event of infection with the coronavirus." *Id.* at 4. Defendant proposes a bail package consisting of a $250,000.00 bond secured by his mother, father, and older sister and strict home detention in the home of either his mother or father. *Id.* at 4–5; Def. Supp. Ltr.

The Government opposes Defendant's motion arguing Defendant cannot meet the evidentiary burden under Fed. R. Crim. P. 32.1(a)(6) to establish he will not flee or pose a danger to the community. Gov't Opp. at 1. In particular, the Government cites: (1) the violent nature of Defendant's current offense; (2) the weight of the evidence; (3) Defendant's criminal history; and (4) the inadequacy of Defendant's bail package. *Id.* at 1–6. The Government further argues a lack of evidence establishing Defendant's release due to the COVID-19 pandemic is warranted. *Id.* at 6–9.

## DISCUSSION

**I.     Defendant Poses A Flight Risk And Danger To The Community**

Under the Bail Reform Act, a district court may order pre-trial detention only if it finds "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Pursuant to the Federal Rules of Criminal Procedure 32.1 and 18 U.S.C. § 3143(a), a person violating the terms of supervised release shall "be detained, unless the [court] finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released*."* *Id*. § 3143(a); *see also United States v. Porter,* 03-

CR-0129 (CPS), 2007 WL 3232502, at *5 (E.D.N.Y. Nov. 1, 2007) (Sifton, J.). The Court considers the four factors laid out by the statute: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4).

The first factor under 18 U.S.C. § 3142(g)—the nature and circumstances of the offense charged—weighs heavily in favor of Defendant's detention. Defendant's charge, Felon in Possession of a Firearm, is serious and violent conduct, particularly considering the actions Defendant allegedly took with that firearm—firing it at another car during a road rage incident. *United States v. Dillard*, 214 F.3d 88, 94 (2d Cir. 2000) ("The risk of violent use posed by a convicted felon's possession of firearms is significant."). Defendant does not dispute the seriousness of the present charges. Def. Mem. at 5. Further, the weight of the evidence—the second factor to be considered under section 3142(g)—is strong as the Government reports DNA and ballistic evidence links Defendant to the shooting. Gov't Opp. at 2, 4

The third factor—history and characteristics of Defendant—also weighs in favor of Defendant's detention. Defendant has a history of violent conduct, association with criminal enterprises, and violating his conditions of release. In addition to a prior conviction of Criminal Possession of a Weapon in the Second Degree (Loaded Firearm), Defendant's original offense of Assault in Aid of Racketeering involved the stabbing of a victim in the torso, throat, and neck. VOSR Rep. at 3.

Contrary to Defendant's assertions, the proposed bail package is inadequate to ensure he will not be a flight risk or endanger the community. ████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████ Indeed, the pandemic has only complicated efforts to monitor defendants on release, presenting new "difficulties in conducting pre-assessments and home visits, particularly during the initial quarantine period following release, as well as difficulties installing electronic monitoring systems." *United States v. Jackson*, 20-CR-46 (EK), ECF No. 16 at 5 (E.D.N.Y., Apr. 6, 2020) (Komitee, J.); *see also* United States Probation Mem. Re: Temporary Revisions to U.S. Probation's Location Monitoring Policy (Apr. 7, 2020).

After considering the factors enumerated in section 3142(g), the Court finds the evidence weighs strongly in favor of detention in order to ensure Defendant's future appearance and the safety of the community.

## II. The Outbreak of COVID-19 Is Not A Sufficiently Compelling Reason To Release Defendant

In light of the factors discussed above, the Court concludes Defendant presents a danger to the community and is a flight risk. Defendant argues, however, he should be released because, "he is particularly susceptible to a COVID-19 infection and there is a heightened risk that, if he is infected, he will experience complications that could lead to severe illness." Def. Mot. at 1.

Pursuant to 18 U.S.C. § 3142(i), "[t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Undoubtedly, the onslaught of the COVID-19 virus is a critical concern and could in some cases be such a

compelling reason. *C.f. Stephens*, 2020 WL 1295155, *3. The analysis of whether a particular defendant should be released on these grounds must be done on a case-by-case basis.

The Court now turns to the specifics of Defendant's situation. Defendant is twenty-five years old. Defendant is currently incarcerated at the MDC, but was not included in the list prepared by the BOP of two hundred vulnerable inmates at the MDC as of March 26, 2020.

███████████████████████████████████████████████
█████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████
███
██████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████

Defendant's situation is akin to the defendant in *United States v. Jackson*, 20-CR-46 (EK) (E.D.N.Y.). The defendant in *Jackson* is thirty-nine years old and has been charged with Felon in Possession of a Firearm. He sought release on the grounds the COVID-19 outbreak imperiled his health, as he suffered a heart attack and stroke one year prior. Mot. for Home Confinement, 20-CR-46, ECF No. 12-1 at 3. In contrast to the instant case, Mr. Jackson is fourteen years older than Defendant and, unlike Defendant, did appear on the BOP March 26, 2020 list of vulnerable inmates at the MDC. Even still, after considering the situation at length, Judge Eric Komitee

8

denied Mr. Jackson's motion for bail, concluding his underlying medical conditions did not merit release.

Similarly, after due consideration of the particular risks faced by Defendant given his health concerns and the risk Defendant's release would pose, this Court concludes the COVID-19 outbreak is not a sufficiently compelling circumstance to justify Defendant's release.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for bond is DENIED.

**SO ORDERED.**

s/ WFK

_____

Dated: April 9, 2020　　　　　　　　　　　HON. WILLIAM F. KUNTZ, II
　　　　Brooklyn, New York　　　　　　　　UNITED STATES DISTRICT