```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,               :
                                        :
            v.                          :    MEMORANDUM & ORDER
                                        :    15-CR-287-20 (WFK)
CORDERO PASSLEY,                        :    19-CR-534 (WFK)
                                        :
            Defendant.                  :
-----------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On June 10, 2021, Cordero Passley ("Defendant") pleaded guilty to a single-count Indictment charging him with being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) in Case No. 19-CR-534, and to violating the conditions of his supervised release in Case No. 15-CR-287-20. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to 120 months of incarceration for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2) in Case No. 19-CR-534, and 24 months of incarceration for violating the conditions of supervised release in Case No. 15-CR-287-20, to run consecutively, for a total of 144 months of incarceration. Defendant is also sentenced to two (2) years of supervised release with special conditions, and is ordered to pay the mandatory $100.00 special assessment.

## BACKGROUND

On November 13, 2019, a grand jury returned a single-count Indictment charging Defendant with being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Indictment, ECF No. 8, Case No. 19-CR-534. On June 10, 2021, Defendant pleaded guilty to the sole count of the Indictment in *United States v. Passley*, Case No. 19-CR-534, and to Charge Eight of the Violation of Supervised Release ("VOSR") Report in *United States v. Artis et al.*, Case No. 15-CR-287-20, charging Defendant with violating the conditions of his release by committing a crime. *See* ECF No. 62, Case No. 19-CR-534; ECF No. 994, Case No. 15-CR-287-20. The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. Family and Personal Background

2

The twenty-seven year old Defendant was born Cordero Jamar Passley on September 7, 1994 in Brooklyn, New York to John Butler and Sandra Jennifer Passley. Presentence Investigation Report ("PSR") ¶ 37, ECF No. 68. Defendant's father resides in Kennesaw, Georgia, and is employed as the regional manager of a freight company. *Id.* Defendant's mother resides in Brooklyn and is employed as a certified nurse's aide. *Id.* Defendant's parents are aware of his conviction and remain supportive of him. *Id.*

Defendant's parents describe him as a kind person. *Id.* ¶¶ 38-39. Defendant's mother recalls Defendant helped senior citizens in their neighborhood and encouraged children to attend Sunday services. *Id.* ¶ 39. Defendant's mother notes Defendant was previously active in church and volunteered to feed the homeless. *Id.* Because she worked two jobs, Defendant's mother states it was difficult to look after Defendant and claims he often "felt all alone." *Id.* Defendant's mother states her absence may have allowed him to become involved with the "wrong crowd." *Id.* She advised Probation the family made efforts to remove Defendant from the community by having him move to Georgia to be with his father. *Id.* Defendant's father describes him as a mature and loving person. *Id.* ¶ 38. He states Defendant had a "difficult childhood" because both of his parents were absent. *Id.* Defendant's father states Defendant had difficulty in school due to his attention deficit hyperactivity disorder (ADHD) and expressed concerns that Defendant would not receive proper medical treatment for his health ailments. *Id.*

Defendant has three maternal half-siblings, two of whom reside in Brooklyn and one of whom resides in Florida. *Id.* ¶ 41. Defendant also has six paternal half-siblings, who reside in Connecticut, Florida, Georgia, and North Carolina. *Id.* Defendant's siblings are aware of his arrest and conviction, and they remain supportive of him. *Id.*

3

Defendant was primarily raised by his mother and maternal half-siblings in a lower-income household, after his parents separated in 1996, when Defendant was two years old. *Id.* ¶ 42. Defendant also stated his father was incarcerated on federal drug charges between 2000 and 2008. *Id.* Defendant advised his childhood was "not good" because his mother worked two jobs given the absence of his father, and he was unable to go outside to play. *Id.* He noted he was not physically abused, but he would receive "harsh beatings" from his mother. *Id.* Defendant felt that as the only son, "everything came down on him." *Id.* He reported his mother could only afford to provide him with limited material items. *Id.* Defendant stated he was diagnosed with ADHD as a child, and admits he should have attended counseling. *Id.* However, Defendant admits he rarely attended his counseling sessions. *Id.*

Defendant has a seven-year old daughter and a two-year old son with Latisha Thomas, who resides in Brooklyn and is employed at Kings County Hospital in Brooklyn. *Id.* ¶ 43. Ms. Thomas describes the Defendant as helpful and says he puts "everyone before himself." *Id.* ¶ 45. She states Defendant's new medications cause mood swings that she believes were partially the cause of the instant offense. *Id.* Defendant's daughter suffers from several physical ailments, including Amniotic Band Syndrome (ABS). *Id.* ¶ 43. Defendant's son was born after Defendant's instant arrest and resides with his mother. *Id.*

2. Educational and Employment History

Defendant obtained his high school equivalency diploma while incarcerated at the MDC. PSR ¶ 68. Defendant attended the ninth through the eleventh grades at William E. Grady High School in Brooklyn, New York, from July 2, 2008 to November 21, 2012. *Id.* ¶ 68. Defendant then dropped out of school. *Id.* In March 2007, while in middle school, Defendant was referred for the Children's Aid Society PINS (Person in Need of Supervision) Diversion Program for his

4

misconduct. *Id.* Grady High School suspended Defendant from school on multiple occasions. *Id.*

Defendant has held various jobs, including working at a freight company, buying and selling clothes, maintenance, stocking shelves, packing and delivering groceries, and driving for delivery companies. *Id.* ¶¶ 71–79.

### 3. Prior Convictions and Arrests

On July 29, 2014, Defendant was sentenced to five years of probation for criminal possession of a weapon in the second degree for a loaded firearm in New York Supreme Court in Brooklyn, New York. PSR ¶ 26. Defendant was seventeen at the time of his arrest and was adjudicated as a youthful offender. *Id.* On July 23, 2018, Defendant was sentenced by this Court to 46 months of custody and three years of supervised release for Assault in Aid of Racketeering. *Id.* ¶ 27. In that case, Defendant, was alleged to have been involved in an aggravated assault of John Doe # 4, wherein Defendant and others assaulted and stabbed John Doe #4 in the torso, throat, and neck. *Id.* As stipulated in paragraph two of the Plea Agreement in that case, Defendant was also involved in bank fraud through the use of fraudulent checks, causing a loss amount of more than $550,000.00. *Id.* Defendant stipulated: (i) between January 6, 2014 and January 20, 2015, he, together with others, conspired to defraud financial institutions, in violation of 18 U.S.C. § 1349 (as charged in Count 65 of the Superseding Indictment); (ii) between January 6, 2014 and July 18, 2014, he, together with others, defrauded Bank of America, in violation of 18 U.S.C. § 1344 (as charged in Count 66 of the Indictment); and (iii) between January 16, 2014 and July 22, 2014, he, together with others, defrauded JPMorgan Chase, in violation of l8 U.S.C. § 1344 (as charged in Count 67 of the Indictment). *Id.*

On January 29, 2019, Defendant was arrested and charged in Kings County Criminal Court with Menacing in the Third Degree. *Id.* ¶ 33. This arrest followed report of a domestic violence incident in which Defendant allegedly grabbed the victim and pulled her down a set of steps, pushed her, and broke objects in her home. *Id.* The victim later retracted her statements to the police, and the charges were dismissed on May 28, 2019. *Id.*

4. Medical and Mental Health

On April 6, 2014, Defendant was shot in both of his arms and in his right thigh. PSR ¶ 49. He was hospitalized for ten days in Kings County Hospital in Brooklyn, New York. *Id.* Defendant underwent surgery at the hospital, and his right arm was repaired with a metal rod and screws. *Id.* One bullet remains lodged in Defendant's left arm, and he has plates and screws in his left forearm. *Id.* In addition, Defendant has a torn nerve in his left arm and his right shoulder easily dislocates. *Id.*

On October 31, 2014, Defendant was struck by a bottle and the butt of a firearm in the back of his head. *Id.* ¶ 50. He was in a coma for seventeen days at Brookdale University Hospital Medical Center in Brooklyn, New York. *Id.* Defendant was hospitalized for three weeks and was then transferred for rehabilitation to Kingsbrook Jewish Medical Center in Brooklyn, New York. *Id.* He left the rehabilitation facility after three weeks, against medical advice. *Id.* The records received by Probation from Kingsbrook relate primarily to Defendant's follow-up treatment for his seizures, starting on August 25, 2017. *Id.* ¶ 52. In addition, the records indicate Defendant was treated for right anterior shoulder dislocation on October 17, 2016. *Id.* The doctors have recommended Defendant undergo surgery on his shoulder, but Defendant declined to do so. *Id.*

Defendant has undergone follow-up surgeries, in which doctors replaced part of his broken skull. *Id.* ¶ 51. Subsequent to the incident, Defendant has suffered from seizures and memory loss. *Id.* Defendant states he suffered from many seizures during his previous federal incarceration term. *Id.* ¶ 53. He sought treatment from a neurologist while on supervised release and has been prescribed epilepsy medication. *Id.* Defendant states his seizures now occur less frequently and he has not had a seizure in "a while." *Id.*

Medical records confirm the Defendant has been diagnosed with the following conditions: dislocation of shoulder; gunshot wound; intermittent explosive disorder; seizures; traumatic brain injury; and being underweight. *Id.* ¶ 54. The records indicate Defendant is seizure-free when he follows his prescribed medication regimen. *Id.*

Defendant was seen by the doctors at the MDC for increased pain in his right shoulder on July 12, 2016. *Id.* ¶ 55. The doctors took x-rays of Defendant's shoulder, and concluded upon review of the x-rays that given the history of trauma to Defendant's right shoulder region and the relatively recent complaint of positional/functional pain, it would be prudent to have an orthopedic evaluation of the Defendant. *Id.*

Defendant also states he was diagnosed with anxiety and bipolar disorder and has been prescribed anti-depressants. *Id.* ¶ 58.

5. <u>Substance Abuse</u>

Defendant admits he first consumed alcohol at the age of fourteen. *Id.* ¶ 60. In 2012, Defendant began to consume alcohol daily. *Id.* He estimated he consumed twelve ounces of "hard liquor" daily. *Id.* Although Defendant states he does not believe he had a problem with alcohol, he admits his daily consumption of alcohol could have been problematic. *Id.* Defendant states he consumed no alcohol during the supervised release term imposed following his

7

previous conviction. *Id.* Defendant first smoked marijuana at age twelve, and he last smoked it prior to his previous arrest. *Id.* ¶ 61. He states he smoked two grams of marijuana per day, and he obtained the drug from friends. *Id.* Defendant states he used liquid codeine two times per month prior to his previous arrest. *Id.* ¶ 62. He stated he started using codeine to "mellow out" after he was shot in 2014. *Id.* Defendant attended a non-residential drug treatment program in 2012. *Id.* ¶ 64. During the Defendant's previous custodial term, he participated in non-residential drug treatment from March 23, 2017 to July 5, 2017, and again from July 5, 2017 to November 16, 2018. *Id.* ¶ 65.

### 6. Nature and Circumstances of the Offense

On October 8, 2019, at approximately 4:30 P.M., Defendant was driving a Toyota Camry in the Flatbush neighborhood of Brooklyn, New York. Defendant had a traffic incident with a work van driven by two victims, wherein the driver of one vehicle impeded the entrance of the other vehicle into the lane. The drivers both came to a stop thereafter, stepped out of their vehicles, and argued. Defendant told the two victims, in sum and substance, that he was going to cause one or both of them serious physical harm. After a woman with Defendant ushered him back into his car, both drivers returned to their vehicles and drove off. Shortly thereafter, Defendant stopped the car, and the woman and a child exited the vehicle. Defendant began to follow the two victims in his car, even after the work van made a U-turn. Defendant then pulled his car alongside the driver's side of the van, pointed a gun at the head of the driver of the van, and fired one shot. The bullet entered the side of the van and struck a metal plate behind the victim's shoulder before ricocheting and coming to rest inside the van cabinet. Defendant then drove away. The victims pursued Defendant, who parked and entered an apartment complex. Defendant was subsequently arrested by law enforcement officers, who recovered a silver and

black loaded Taurus model PT709 semi-automatic pistol bearing serial number TGW67937 from a trash room in the apartment complex. A ballistics analysis matched this firearm to the bullet recovered from inside the van and matched the caliber of the spent shell casing found on the floor of Defendant's vehicle.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, in which Defendant attempted to use a dangerous firearm to kill an unarmed individual. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his offense.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and to one violation of the condition of his supervised release imposed in Case No. 15-CR-287-20 requiring him to refrain from "commit[ting] another federal, state, or local crime." For his violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Defendant faces a maximum term of imprisonment of ten years. 18 U.S.C. §§

922(g)(1), 924(a)(2). Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2).

A term of not less than one nor more than five years of probation is also available, because the instant offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). If probation is imposed, a fine, restitution, or community service must also be imposed as a condition of probation unless the Court finds extraordinary circumstances exist that would make such a condition plainly unreasonable. 18 U.S.C. § 3563(a)(2). Defendant also faces a maximum fine of $250,000.00 under 18 U.S.C. § 3571(b).

For his violation of supervised release, Defendant faces a maximum term of imprisonment of two years. 18 U.S.C. §§ 3583(g), 3583(e)(3). The Court may also order a new term of supervised release pursuant to 18 U.S.C. § 3583(h). The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. *Id.*

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 922(g)(1) offenses is United States Sentencing Guideline ("USSG") § 2K2.1. Per the Cross Reference in USSG § 2K2.1, if Defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, the Court must apply USSG § 2X1.1.

Under USSG § 2X1.1(c), when an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, the Court must apply that guideline section. Accordingly, as the instant offense involved an assault with intent to commit murder, USSG § 2A2.1 applies. As the Court has concluded in its decision following the *Fatico* hearing held in this case, the object of the offense would have constituted first degree murder, which results in a base offense level of 33 pursuant to USSG § 2A2.1(a)(1). Because Defendant has clearly demonstrated acceptance of responsibility for the offense, the offense level is decreased by two levels.

Because the Government stated it was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. Therefore, the total offense level is 30.

Defendant's criminal convictions result in a criminal history score of 5. Defendant committed the instant offense while under a criminal justice sentence; specifically, he was on federal supervised release in connection with his conviction on July 23, 2018. Therefore, 2 points are added under USSG § 4A1.1(d), resulting in a total criminal history score of 7. According to USSG Chapter 5, a criminal history score of 7 establishes a criminal history category of IV.

Based upon a total offense level of 30 and a criminal history category of IV, the Guidelines imprisonment range is 135 to 168 months.

However, the statutorily authorized maximum sentence is less than the maximum of the applicable guideline range; therefore, the restricted guideline range is 120 months of incarceration. USSG §5G1.1(a).

Probation recommends a sentence of 120 months of incarceration followed by 2 years of supervised release with special conditions with respect to the felon in possession conviction and

recommends a sentence of 24 months of incarceration with respect to the violation of supervised release, for a total of 144 months of incarceration. The Government also recommends a sentence of 144 total months of incarceration, comprising a sentence of 120 months for the felon in possession conviction and 24 months for the violation of supervised release. Defense counsel recommends a below-guidelines sentence.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission" 18 U.S.C. § 3553(a)(5). Pursuant to USSG § 7B1.3(f), any term of imprisonment upon revocation of supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the Defendant serves, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release. This policy statement applies to Defendant's sentence in this case, and the Court accordingly imposes the term of imprisonment ordered on Defendant's revocation of supervised release to be served consecutively to his sentence of imprisonment for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). This factor does not apply here.

## CONCLUSION

As my pastor tells our congregation every week: this is not a dress rehearsal, this is a real life. The brilliant Russian playwright Anton Chekhov put it best: "if in the first act you have hung a pistol on the wall, then in the following one it should be fired. Otherwise, do not put it there."

Defendant knew he was a previously convicted felon, yet in the first act of this drama he chose to hang a pistol on the wall of his life. In the following act, he fired that pistol. Defendant knew he had no right to own that pistol; he knew he had no right to carry that pistol; he knew he had no right to fire that pistol. But he did so anyway.

The Court hereby sentences Defendant to 120 months of incarceration for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) in Case No. 19-CR-534, and a sentence of 24 months of incarceration for violating the conditions of supervised release in Case No. 15-CR-287-20, to run consecutively. A total of 144 months of incarceration is imposed.

After completing those terms of incarceration, Defendant is hereby sentenced to two years of supervised release with special conditions. The Defendant is ordered to pay the $100.00 special assessment, which the Court is required to impose on each count in all cases.

The Court does not impose a fine because Defendant appears unable to pay a fine. This sentence is consistent with and is sufficient but not greater than necessary to accomplish the purposes of § 3553.

The Court also expressly adopts the factual findings of the Presentence Investigation Report and any addenda thereto, barring any errors contained therein and to the extent they are not inconsistent with the sentence of this Court.

SO ORDERED.

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 14, 2022
      Brooklyn, New York